UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald KILLEBREW,
Defendant-Appellant.

No. 76–1467.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1977.

Decided Aug. 10, 1977.

Milton R. Henry, Henry, Grubbs & Bledsoe, Detroit, Mich., for defendant-appellant.

Philip Van Dam, U.S. Atty., Steven W. Rhodes, Detroit, Mich., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and SILER, District Judge.*

PHILLIPS, Chief Judge.

Gerald Killebrew, the defendant-appellant, appeals from a jury conviction on two counts of receipt and possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. App. § 1202(a)(1).[1] Two issues are presented for

---

\* Honorable Eugene E. Siler, Jr., Judge, United States District Court for the Eastern and Western Districts of Kentucky, sitting by designation.

1. § 1202. Receipt, possession, or transportation of firearms.

   (a) Persons liable; penalties for violation. Any person who—

review: (1) Whether the district court erred in denying defendant's motion to suppress evidence seized at the time of his arrest where defendant's arrest followed and was precipitated by the warrantless entry and search of his motel room? and (2) Whether separate convictions on two counts of receipt and possession of firearms after having been convicted of a felony are proper where the defendant received two firearms at different times but possessed them simultaneously? We answer the second issue in the affirmative, but reverse and remand because the entry and search of defendant's motel room violated his rights under the fourth amendment.

## I.

Gerald Killebrew was arrested on November 15, 1974, in his room at a Holiday Inn Motel in Taylor, Michigan, by officers of the Taylor Police Department. A shotgun and a pistol found in the motel room were confiscated by the police. On April 28, 1975, a federal indictment was returned charging Killebrew with two counts of receiving and possessing a firearm, after having been convicted of a felony, in violation of 18 U.S.C. App. § 1202(a)(1). (See note 1, *supra*). Prior to trial, defendant made a motion to suppress the firearms found in his motel room on the ground that the warrantless entry, search and arrest by the police violated his fourth amendment rights. Evidentiary hearings were conducted before the district court on July 30 and August 5, 1975. The district court denied Killebrew's motion to suppress and the case went to trial. On November 14, 1975, a jury found defendant guilty on each count of the two count indictment. A motion for new trial was denied by the district court and defendant was sentenced to two years'

custody on each count, to run concurrently. On appeal Killebrew challenges the failure of the district court to suppress the firearms found in his motel room and also challenges the propriety of his conviction for multiple violations of 18 U.S.C. App. § 1202(a)(1).

The evidence at the suppression hearings shows the following. Early in the evening of November 14, 1974, the Innkeeper at the Eureka Road Holiday Inn Motel in Taylor, Michigan, was summoned by a guest to room 154 of the motel to repair a malfunctioning heater. While in room 154, the Innkeeper noticed a pistol lying on the bed. The occupant of the room (later determined to be the defendant-appellant) was present and when questioned about the gun by the Innkeeper he replied: ". . . it's all right. I am a salesman and I have a permit for it." The Innkeeper ascertained that the man in the room would be staying another night and asked him to take the gun with him when he left the room to avoid upsetting the motel's maids. Before leaving the room, the Innkeeper also noticed a large box sitting on the pillow which he described as being "about the right size to hold a gun."

Returning to the motel office, the Innkeeper consulted the registration card for the guest in room 154. The room was registered to a James Walker, 2670 St. Antoine Street, Detroit, Michigan. Noting that the desk clerk who had registered Mr. Walker had failed to verify the information on the card, the Innkeeper made a telephone call to "Information" and was given a number for a James Walker on St. Antoine Street.[2] Satisfied with this verification, the Innkeeper told the desk clerk that the man in room 154 "checks out."

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, * * * and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. The 1974 Telephone Directory for Detroit, Michigan, apparently contained a listing for a "James Walker" on St. Antoine Street. The address listed for this James Walker was "2600 St. Antoine St.," not 2670 St. Antoine as was indicated on the motel registration, but this discrepancy was not known to the Innkeeper or the officers at the time of the events involved in this case.

Around 10 p. m. on the night of November 14th, the Innkeeper's wife came on duty as the night clerk at the motel. Before retiring for the night, the Innkeeper related to his wife that he had seen a gun in room 154 and that he had seen a box that might contain a rifle or shotgun. The Innkeeper told his wife that if the police officers came around for coffee later in the night she should mention the guns to them and let them check it out.

Officer Raymond Reagan of the Taylor Township Police Department testified that he was flagged down by the assistant manager of the Eureka Road Holiday Inn at about 2:30 a. m. on November 15, 1974. The assistant manager told Officer Reagan that her husband, the manager of the motel, had seen a pistol in room 154. Officer Reagan requested to see the registration card for that room. He noted the name and address and that the occupant was driving a 1974 Cadillac automobile, license number RSV–186. Officer Reagan was informed by the assistant manager that the occupant of room 154 was approximately 34 years old.

As the district court noted, the testimony at the suppression hearings concerning subsequent events at the motel is somewhat in conflict. A series of "lien checks" were run on the computer maintained by the Michigan State Police. The record of lien requests and returns for the night in question shows that at 2:30 a. m., in response to a query by the Taylor Police Department, the computer reported that there were no outstanding violations or tickets against the vehicle with license number RSV–186 and the vehicle had not been reported stolen. At 2:38 a. m. a message was forwarded to the Taylor Police Department stating that the Cadillac in question was registered to a Marcia and Gerald Killebrew, 3809 Hazelwood, Detroit. Apparently based on the information gained by Officer Reagan from the motel registration card and from questioning the assistant manager, a request was forwarded to the computer for liens and warrants for Gerald ("James") Walker, Negro male, approximately age thirty. At 2:45 a. m. the computer responded with information on four James Walkers.

The Taylor Police also asked for warrants and liens on a Gerald Killebrew, Negro male, age 30, and at 2:46 a. m. the response came back negative indicating there was no information on record regarding such a person. At 3:02 a. m., after the entry, search and arrest, a further request for information on a Gerald Killebrew with date of birth specified as July 9, 1937, came back indicating two outstanding traffic warrants.[3]

At some point during this series of communications between Officer Reagan, the Taylor Police Department and the state crime computer, Officer Reagan requested back-up assistance from his headquarters. A Sergeant Harshberger and other officers came to the motel, bringing to at least five the number of officers then present. Sergeant Harshberger testified that a call was placed to the room where the Innkeeper of the motel was sleeping and a layout of room 154 was obtained. The Innkeeper's wife showed the officers to room 154. Sergeant Harshberger, Officer Reagan and an additional officer carrying a shotgun stationed themselves in the hallway outside of the room. Two other officers were dispatched to cover a second exit from the room.

With his service revolver drawn, Sergeant Harshberger knocked at the door to room 154. A voice inside asked who it was, and the Sergeant replied "Police Department." The door opened to the length of the night latch on the inside, and Sergeant Harshberger positioned himself so that the

3. The first computer return to the Taylor Police Department concerning a Gerald Killebrew (2:46 a. m.) did not show the two outstanding warrants found on the later inquiry (3:02 a. m.) because the earlier request was for a Gerald Killebrew, age 30. According to Government testimony at the suppression hearings, the search routine employed by the Michigan State Police Computer checks dates of birth within only three years of the approximate age submitted with a request. Gerald Killebrew was 37 years old at the time of the events in question.

occupant of the room could see his uniform. The officers observed a Negro male peering out through the crack in the door. The occupant unlocked the door and stepped out into the hallway dressed in a bathrobe.

Sergeant Harshberger testified that he asked the man in the hallway if he was James Walker. The man replied in the affirmative. The Sergeant asked the man for some identification. As told by Sergeant Harshberger:

". . . At that point he [the occupant of room 154] turned around and walked back into the room. I followed him into the room and after I entered the room and had been in the room possibly five or six feet where I could see the bed, I noticed the pistol laying out in the open on the bed . . . I asked the subject if it was his gun. He stated that it was. I asked him if he had a permit for it and if it was registered . . . * * * . . . [H]e advised me that he had no permit and that the gun was not registered."

According to the Sergeant, the man in the room then produced a Michigan Drivers License with his picture on it which indicated his name was Gerald Killebrew. Sergeant Harshberger testified that he then requested by radio a lien check for outstanding warrants on the name Gerald Killebrew. Some four or five minutes passed before the response came back that there were no warrants outstanding.[4] Again in the words used by the Sergeant at the suppression hearing: "At that point I advised the subject that he was under arrest for possession of an unregistered gun and for the felony warrant that was outstanding under the name James Walker." The gun on the bed was seized, and the defendant was handcuffed.

As indicated, the defendant was not dressed at the time of these events. Officer Reagan, having also followed the defendant into his room, approached a bed in the room to gather some clothes for the defendant to wear to headquarters. Between the two beds in the room, Officer Reagan kicked an oblong box lying on the floor. Suspecting from the size and weight of the box that it might contain a weapon, Officer Reagan picked up the box and opened it. The box contained a loaded shotgun rigged within the box in a manner allowing it to be fired without removal from the box. The shotgun was confiscated and the defendant taken to Taylor Police Headquarters. According to Sergeant Harshberger and Officer Reagan, all of the described events within room 154 of the motel took place between 2:30 and 2:45 a. m.

II.

The district court stated the following conclusions in reaching its decision denying defendant's motion to suppress the pistol and shotgun seized from room 154:

A careful review of the facts and circumstances surrounding the arrest of the defendant satisfies this court that the items seized were incident to a lawful arrest. At the time of the arrest, the officers knew that the defendant had registered as James Walker, that he had identified himself as James Walker, and that subsequently he had produced identification as Gerald Killebrew. They also knew that the defendant was in possession of a weapon and that the handgun was not registered. They were also aware that there were several outstanding arrest warrants on James Walkers with different addresses from that given in the guest register by the defendant. Yet, at the time of the arrest, it is likely that there was still some uncertainty as to the exact identity of the defendant. Under these circumstances, the police officers would have been remiss in their duties had they terminated the investigation and released the defendant. While none of the above facts alone would necessarily be sufficient to establish probable cause for an arrest and seizure, taken in aggregate, they do support the arrest.

4. Presumably, this was the 2:46 a. m. response on the name Gerald Killebrew mentioned above.

Killebrew contends that the guns obtained from his motel room were not seized "incident to a lawful arrest" because the warrantless intrusion of the officers into his room was unlawful and tainted the subsequent seizure of evidence and arrest. The Government responds that the officers herein were acting in the course of a legitimate investigation and made a lawful entry into appellant's room as a reasonable security precaution under the circumstances. In support of this argument, the Government cites *United States v. Blake*, 484 F.2d 50 (8th Cir. 1973); *United States v. Looney*, 481 F.2d 31 (5th Cir. 1973); *United States v. Briddle*, 436 F.2d 4 (8th Cir. 1970); and *United States v. Broomfield*, 336 F.Supp. 179 (E.D.Mich.1972).

█ The burden of justifying a warrantless entry into a private home or motel room is, of course, upon the Government. *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). It is beyond dispute that the warrant requirements of the fourth amendment have application to searches of motel and hotel rooms as well as private homes. As the Supreme Court stated in *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964):

No less than a tenant of a house, or the occupant of a room in a boarding house, *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

█ The district court treated this case as a conventional fourth amendment search and seizure problem. The record indicates, however, that the purpose of the warrantless entry into Killebrew's motel room may have been to effect an arrest, rather than to carry out a search. Officer Reagan testified at the suppression hearing on July 30, 1975:

Q Okay, and what was the purpose of your going to room 154?

A To arrest James Walker.

Sergeant Harshberger responded on cross-examination on this question as follows:

A I would say at the point where we had the men cover the back door we were fairly certain that we were going to be effectuating an arrest.

Q . . . [S]o when you got there and you sent the men to the back door . . . you were fairly certain that you were going to effectuate an arrest for some particular reason, isn't that correct?

A Yes, sir, at that point.

If the entry into the motel room is characterized as an entry for purposes of effectuating an arrest, as opposed to an entry for purposes of conducting a search, the warrantless entry under the facts of the present case violate the fourth amendment rights of Killebrew. *United States v. Shye*, 492 F.2d 886 (6th Cir. 1974); *Vance v. State of North Carolina*, 432 F.2d 984 (4th Cir. 1970); *Dorman v. United States*, 140 U.S. App.D.C. 313, 435 F.2d 385 (1970).

The result is the same if the warrantless entry is characterized as for the purpose of conducting a *search*, as opposed to an entry for the purpose of making an *arrest*. The facts of the present case do not come within any of the well delineated exceptions to the fourth amendment requirement for a search warrant. *See United States v. Chadwick*, —— U.S. ——, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Murrie*, 534 F.2d 695 (6th Cir. 1976); *United States v. Stoner*, 487 F.2d 651 (6th Cir. 1973); *United States v. Nelson*, 459 F.2d 884 (6th Cir. 1972).

The critical time as of which the fourth amendment question must be determined in this case is the moment of the warrantless entry by the officers into the motel room. At that time the officers knew only that the occupant of the room had a gun and were unaware of the fact that it was not registered. As found by the district court, there was uncertainty as to the identity of the occupant at the time of the entry. At the moment of the entry the police did not

have all the information they later obtained concerning James Walker, Killebrew's alias. The occupant of room 154 was not known to be dangerous and no grave offense or crime of violence was threatened or indicated. Under the circumstances, the warrantless entry cannot be justified on the theory that Killebrew might have escaped during the time necessary to obtain a warrant.

We conclude that regardless of whether the entry into the motel room is considered to have been made for the purpose of effecting an arrest or for the purpose of making a search, the entry violated the fourth amendment rights of appellant and the evidence should have been suppressed by the district court.

The record in the present case demonstrates careful work on the part of the Innkeeper and his wife and the Taylor police. No matter how efficient it may be, however, police work must fail when it does not conform to the requirements of the fourth amendment.

### III.

■ We reach the second issue on this appeal to provide guidance to the district court in the event appellant is tried again. Appellant contends that the possession of several firearms after having been convicted of a felony constitutes but a single offense under 18 U.S.C. App. § 1202(a)(1).[5] Appellant cites *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975), and *United States v. Calhoun*, 510 F.2d 861 (7th Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975), in support of this contention. The Government responds that under this court's opinion in *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir. 1976), *petition for cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1976), the proper unit for prosecution can be a single firearm where several firearms are acquired at different times and then possessed together in violation of 18 U.S.C. App. § 1202(a)(1). We agree with the Government's analysis.

In *Rosenbarger, supra*, 536 F.2d at 721, this court held as follows:

We are of the opinion that only one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, *absent a showing that the firearms were stored or acquired at different times or places.* This view is premised upon the notion that Congress, and not the Courts, should define the criminal activity which is sought to be punished. *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). (emphasis added).

Similarly, in *Calhoun, supra*, 510 F.2d at 861, one of the cases cited by the appellant, the Seventh Circuit observed:

We are satisfied the law in this circuit, and the prevailing law of a majority of the circuits is, as expressed in this circuit's case of *McFarland v. Pickett*, 469 F.2d 1277 (7th Cir. 1972), that *absent a showing that two firearms were stored or acquired at different times or places,* there is only one offense, not two . . . . (emphasis added).

In the case at hand, there is evidence in the record indicating that appellant acquired the two firearms found in his motel room at different times. Appellant's wife testified at trial that appellant received the shotgun in early November of 1974 at a gunshop in Detroit, Michigan. She further testified that appellant acquired the pistol from a relative one year before the events herein. The condition precedent to prosecution and conviction on separate counts—evidence of separate acquisition—has been met on the facts of this case. *Rosenbarger, supra*, 536 F.2d at 721; *Calhoun, supra*, 510 F.2d at 861.

For the reasons indicated, we hold that prosecution and conviction on separate counts for two violations of 18 U.S.C. App. § 1202(a)(1) was appropriate on the facts of this case.

Upon the grounds stated in Part II of this opinion, we reverse the convictions and remand this case to the district court.

---

**5.** See n. 1, *supra*.