UNITED STATES of America,
Plaintiff-Appellee,

v.

Diego BOTERO, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Dennis CANTALUPO,
Defendant-Appellant.

Nos. 78–1413, 78–1414.

United States Court of Appeals,
Ninth Circuit.

Nov. 9, 1978.

Rehearing and Rehearing En Banc
Denied Jan. 22, 1979.

Donald B. Ayer, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

N. Rommel Bondoc (argued), San Francisco, Cal., Michael Stepanian (argued), San Francisco, Cal., for defendants-appellants.

Before TRASK and SNEED, Circuit Judges, and CRAIG *, District Judge.

CRAIG, District Judge.

Appellants Diego Botero and Robert Dennis Cantalupo, based on a stipulated Statement of Facts, submitted to the District Court following waiver of jury trial, were found guilty of conspiracy to import cocaine, 21 U.S.C. § 952(a), 960 and 963; importation of cocaine, 21 U.S.C. § 952(a), and possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). Each was sentenced to a five-year prison term with a three-year special parole term. Appellants bring this appeal challenging the use of an electronic tracking device, a warrantless entry into an apartment to make an arrest, the validity of an affidavit supporting a request for a search warrant, and the use of Appellant Cantalupo's post-arrest statements, the latter assertedly in violation of *Miranda.* We affirm the conviction.

## I. FACTS

On September 29, 1977 a shipment of leather handbags, sent from Colombia, S. A. to "South American Imports," Sunnyvale, California, arrived at the San Francisco International Airport. A lawful Customs search revealed approximately nine pounds of cocaine hidden in secret compartments of the handbags. The shipment was prepared for controlled delivery by Drug Enforcement Administration (DEA) agents and two electronic surveillance devices were placed inside the packages. The devices inserted emitted beeping signals that allowed agents to track the parcels. The beep emitted by the devices changed tone when the parcels were opened. In addition to the electronic devices a fluorescent powder, resembling cocaine, was inserted in each of the false compartments of the handbags. The bags and shipment were then resealed for delivery.

On October 5, 1977 Appellant Diego Botero, of South American Imports, was advised that his shipment of leather handbags had arrived and been cleared by Customs. Drug Enforcement Administration agents observed Botero accept delivery and followed him to Burlingame, California where Botero met two co-defendants, not parties to this appeal. Botero and his two associates were observed to proceed to a San Carlos, California apartment building, arriving at approximately 5:15 p. m. The shipment was carried into Apartment No. 2 and at 5:25 p. m. the DEA agents received a change of tone from the beepers, indicating that the shipment had been opened. Within five minutes Appellant Robert Cantalupo emerged from the apartment and was arrested by DEA agents who followed him to a nearby grocery store. The agents returned to the apartment, knocked on the door, and arrested Appellant Botero in the doorway as he opened the door. The agents then entered the apartment and observed leather handbags, many with the compartments opened and in disarray about the living room. The two associates of Botero, present in the apartment, were then arrested.

The four prisoners were removed to the San Carlos police department. A black light examination disclosed that all four prisoners were marked with the fluorescent powder.

* The Honorable Walter Early Craig, Chief Judge for the District of Arizona, sitting by designation.

After being informed of his *Miranda* rights, Cantalupo was questioned by a DEA agent. Cantalupo disclosed that he knew the leather bags contained cocaine, thought the shipment contained approximately one kilogram of cocaine, and that his share of the profits would be in the neighborhood of $10,000 plus what he might earn from additional selling. The period of interrogation lasted about 45 minutes and terminated when Cantalupo refused to detail his remarks for written or electronic transcription until he could consult with an attorney. During the interview, on several occasions, Cantalupo requested and was refused permission to call his girlfriend. The interrogating officer believed that the request was for the purpose of arranging bail for Cantalupo.

Later, on the same evening, a search warrant was issued to search the apartment at which the shipment was delivered and which was found to be Cantalupo's apartment. A search was conducted the following day. Leather handbags, cocaine, narcotics paraphenalia, cartons from the controlled delivery and identification papers were discovered and seized. Botero and Cantalupo were indicted by a grand jury on October 12, 1977. Motions to suppress were heard and denied November 18, 1977 and, on the stipulated Statement of Facts following waiver of a jury trial, the appellants were convicted by the court on January 3, 1978. The appellants assert four grounds for reversal on their appeal:

1. Warrantless installation and use of electronic surveillance devices violated Appellants' Fourth Amendment rights.

2. The warrantless entry into the apartment, and arresting Botero as he opened the door, violated the Fourth Amendment.

3. The affidavit supporting the post-arrest warrant request to search Cantalupo's apartment was invalid because of the failure to disclose the use of the beepers.

4. Cantalupo's in-custody statements should have been suppressed because of a failure to comply with the *Miranda* warnings.

## II. INSTALLATION AND USE OF THE ELECTRONIC SURVEILLANCE DEVICES

■ The initial opening of the shipment by Customs agents was lawful. Customs officials are authorized to inspect incoming international shipments when they have a "reasonable cause to suspect" that the shipment contains contraband. *U. S. v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 612; *U. S. v. Dubrofsky,* 581 F.2d 208 (9th Cir. 1978). The issue of installation and use of electronic surveillance devices (beepers) and Fourth Amendment consequences has been laid to rest by *Dubrofsky,* supra.

## III. BOTERO'S ARREST

■ Botero asserts his arrest was improper because it occurred without a warrant in a private home. The agreed Statement of Facts discloses "in response to (the agent's) knock, the door was opened by defendant Botero. He was placed under arrest at that time." The arresting officers were not required to enter the apartment in order to place Botero under arrest. Therefore, the issue of a warrantless entry into the apartment to arrest Botero is not before us. Moreover, in *U. S. v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), it was held that a defendant standing in a doorway cannot divert an arrest by retreating into the house. The *Santana* court considered the doorway to be a public place. Thus, even if the arresting officers followed Botero into the apartment to arrest him, the entry was proper under *Santana.* In addition, had the arresting officers actually entered the apartment to arrest Botero, the arrest would still have been a valid one under the exigency of the circumstances which justified the warrantless entry to make the arrest. *U. S. v. McLaughlin,* 525 F.2d 517 (9th Cir. 1975). It is obvious that, had the arrests not taken place as they did, the contraband under surveillance would have been in imminent danger of removal or destruction. *U. S. v. Flickinger,* 573 F.2d 1349 (9th Cir. 1978). Moreover, in the in-

stant case, the agents did not conduct a search nor seize any evidence in the apartment incident to the arrest. In this respect, the arresting officers disclosed considerable restraint in securing the apartment and awaiting the issuance of a search warrant.

## IV. THE AFFIDAVIT SUPPORTING THE POST–ARREST SEARCH WARRANT

Appellants assert that the evidence seized in the apartment should have been suppressed because the affidavit in support of the search warrant did not disclose the use of electronic tracking devices. In fact, the affidavit does mention the use of the electronic devices (Tr. at 149, 150). Moreover, omissions or misstatements in a search warrant affidavit, although negligent, are fatal only if reckless and made with intent to deceive the court. Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Cf. United States v. Hole,* 564 F.2d 298 (9th Cir. 1977); *U. S. v. Damitz,* 495 F.2d 50 (9th Cir. 1974); *U. S. v. Carmichael,* 489 F.2d 983 (7th Cir. 1973); *U. S. v. Marihart,* 492 F.2d 897 (8th Cir. 1974), *cert. denied* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). There is no evidence in the record of bad faith by DEA agents for the purpose of deceiving the court by omitting the detail of the use of the beepers. The affidavit, in reciting the circumstances leading to Appellants' arrest, readily establishes probable cause to search the apartment for the items designated. The search warrant was validly issued.

## V. CANTALUPO'S IN–CUSTODY STATEMENTS

The final position of Appellants is that Cantalupo's statements to the DEA agent following arrest should be suppressed because the agent denied Cantalupo's request to call his girlfriend. Appellants assert, contrary to the agent's understanding, that the purpose of the call was to have Cantalupo's girlfriend obtain an attorney for him. At the suppression hearing on this issue it was found that Cantalupo gave a knowing and voluntary waiver of his *Miranda* rights when he made the statements. It is the rule of this court, and generally, that Findings of Fact made at a suppression hearing will not be disturbed on appeal unless "clearly erroneous." *U. S. v. Chase,* 503 F.2d 571 (9th Cir. 1974), *cert. denied* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975); *U. S. v. Welp,* 469 F.2d 688 (9th Cir. 1972); *Campbell v. U. S.,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). There is nothing in the record in this case to indicate that the findings by the district court at the conclusion of the suppression hearing were "clearly erroneous." From the evidence before him, and from the record before this Court, there is nothing to indicate that the district court finding was other than proper.

The convictions are affirmed.

AFFIRMED.