**UNITED STATES of America**

v.

**Frank Randall McCOOL.**

**No. 81–30193.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Nov. 27, 1981.

William M. (Bill) Cohen, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

E. E. (Bo) Edwards, III, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This Memorandum addresses the government's motion to reconsider the Court's previous ruling in this case, which granted defendant McCool's motion to suppress a set of car keys seized from his person after his arrest. *See* Memorandum and Order of November 16, 1981. Upon thorough reconsideration of the troubling fourth amendment issues raised by this case, the Court is now of the opinion that defendant's arrest did not violate the fourth amendment. Accordingly, the government's motion to reconsider shall be granted, and defendant's original motion to suppress the car keys is consequently denied.

█ In its November 16 Memorandum, the Court found that defendant's arrest was supported by probable cause, a finding supported only by reference to the government's brief. Given the change of result effected by today's ruling, however, the Court now deems it appropriate to set forth more explicitly the basis for its finding of probable cause. On September 8, 1981, Agent William Tucker of the DEA, acting in an undercover capacity, met with James McCloud (a co-defendant in this case) at McCloud's residence. Agent Tucker had previously purchased qualudes from McCloud and had arranged during the Labor Day weekend to purchase additional quantities from him. After waiting for a time at McCloud's house, Agent Tucker and McCloud separately drove to the Nob Hill Villa Apartments. McCloud had told Tucker that they were driving to these apartments because that's where the qualude sale would be made. Upon arriving at the Nob Hill Villa, McCloud instructed Agent Tucker where to park, and McCloud parked to the left of Agent Tucker. Shortly after McCloud and Tucker arrived in the parking lot of Nob Hill Villa, Agent Tucker observed defendant McCool come out of the doorway that leads to Building E of the apartments and walk over to McCloud's car. At that time McCool's name was unknown to the agent.

McCool stayed at McCloud's car for approximately two minutes, and then he walked back to Building E. (The testimony was unclear as to whether McCool actually got into McCloud's car.) There was a common entrance to Building E, and therefore Agent Tucker could not tell which apartment McCool entered. McCloud, now with a large bulge under his t-shirt, came over and got in Agent Tucker's car. The bulge, as it turned out, consisted of a package of approximately 1,000 qualudes. After performing a field test on one of the tablets, Agent Tucker placed McCloud under arrest.

After his arrest, McCloud told Agent Tucker that his source's name was McCool. McCloud did not know the number of McCool's apartment, however. DEA Agents Tucker and Owensby then approached Building E in an effort to locate McCool's apartment. Agent Tucker asked someone standing on a balcony if he knew McCool, but he did not. In the meantime, Tennessee Bureau of Identification Agent Leigh Grinalds, who had observed the drug transaction from another surveillance point, informed Agent Tucker that McCool's package had come out of a green car. Agent Tucker then asked this unidentified third party if he knew who drove the green car, and he was told that the person driving the green car lived in Apartment E–14, which was the apartment directly below the balcony where the third party was located.

Based upon these facts alone, the Court finds that the agents had probable cause to arrest the occupant of Apartment E–14, who turned out to be defendant McCool. At that point, Agent Tucker had sufficient information to justify a belief that the occupant of Apartment E–14 had committed a crime. *Cf. Brinegar v. United States*, 338 U.S. 160, 175–76, 93 L.Ed. 1879, 69 S.Ct. 1302, 1310–11, (1949). Even in the absence of probable cause at this point, the agents were certainly entitled to knock on the door of Apartment E–14 as part of an investigation based upon reasonable suspicion. *See United States v. Gomez*, 633 F.2d 999, 1005–07 (2d Cir. 1980); *Commonwealth v. Boswell*, 374 Mass. 263, 372 N.E.2d 237 (1978), *cited in* 2 W. LaFave, Search and Seizure

§ 6.1(c), at n.82 (1978). When McCool opened the door, the agents indisputably had probable cause to arrest him at that point, because that encounter established that McCool, the inhabitant of Apartment E–14, was the same person who had delivered the package to McCloud.

■ Having found that McCool's arrest was supported by probable cause, the Court must now determine whether McCool's arrest was illegal because it violated the warrant requirement of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *Payton* established a rule prohibiting law enforcement officers from making warrantless and nonconsensual entries into a suspect's home to make a routine felony arrest. 445 U.S. at 576, 100 S.Ct. at 1375. It should be noted that the *Payton* holding did not modify the law of this circuit; as the *Payton* majority observed, *id.* at n.4, this circuit originally recognized a warrant requirement for arrests made in a suspect's home in a case decided seven years ago. *See United States v. Shye,* 492 F.2d 886 (6th Cir. 1974); *see also United States v. Killebrew,* 560 F.2d 729 (6th Cir. 1977).

The short answer to this inquiry is that *Payton* and its predecessors in this circuit are inapplicable if arresting officers do not enter a dwelling to make the arrest at issue. *See United States v. Botero,* 589 F.2d 430, 432 (9th Cir. 1978),[1] *cited in* 2 W. LaFave, *supra,* at 389 n.73.1 (Supp.1981). In other words, if law enforcement officers knock on a suspect's door and then arrest him at the door when he answers, the warrant requirement is inapplicable. *Payton* and its predecessors in this circuit dealt with situations in which officers crossed the threshold and entered dwellings to make arrests, facts which are not presented in this case. For example, in *United States v. Killebrew,* 560 F.2d 729 (6th Cir. 1977), the defendant answered an officer's knock on his motel room door, but was arrested only after the officer had entered the motel room and found evidence of firearms violations. *See id.* at

731–32. In this case, by contrast, defendant McCool was arrested as soon as he opened the door, and the agents apparently led him out of the apartment immediately upon the arrest. *See* Transcript of Evidentiary Hearing 16.

Under this analysis, the *Payton* rule prohibiting warrantless and nonconsensual entries into a suspect's home to make routine felony arrests is inapplicable to "doorway arrests" even though, as a technical matter, the arrest occurs inside the home. This point is important because McCool's arrest occurred while he still stood within his home, even though he was quickly removed from it. *See United States v. Johnson,* 626 F.2d 753, 755–56 (9th Cir. 1980). *Cf. United States v. Kinney,* 638 F.2d 941, 944 n.2 (6th Cir. 1981) (dicta) (where agent knocked and announced, defendant opened the door and then started to close it, agent grabbed the defendant and pulled him outside, arrest occurred outside the home).

Even though the *Payton* rule is inapplicable to this case because the arrest was accomplished without an entry, the Court cautions that a different result might follow if the agents had had an opportunity to obtain a warrant for McCool's arrest before the events recounted above. *Payton* expressly limited itself to cases involving "routine arrests in which there was ample time to obtain a warrant," 445 U.S. at 583, 100 S.Ct. at 1378, a statement that clearly implies the possibility of different rules when arrests of particular individuals are not "planned." *See* 2 W. LaFave, *supra,* at 391–95. In the Ninth Circuit's *Johnson* case cited above, the court found an unlawful "doorway arrest" on facts similar to those of the instant case, except that in *Johnson* the agents apparently could have obtained an arrest warrant before going to the defendant's home. The court distinguished *United States v. Botero, supra,* 589 F.2d at 432–33, on the grounds that *Botero* involved no subterfuge in getting the suspect to open the door. In *Botero,* the agents knocked

---

1. *Botero* was decided after a pre-*Payton* Ninth Circuit decision that followed this circuit's decision in *United States v. Shye, supra,* which

prohibited warrantless entries of a dwelling to make arrests. *See United States v. Prescott,* 581 F.2d 1343 (9th Cir. 1978).

and announced their presence, whereas in *Johnson* the agents identified themselves by fictitious names. *See* 626 F.2d at 755. In this Court's opinion, that distinction is immaterial.[2] The important distinction between *Johnson* and *Botero,* although the Ninth Circuit did not address it, is that in *Johnson,* the agents had "ample opportunity" to obtain a warrant for Johnson before they went to his home, while in *Botero,* the arrest followed a series of rapidly unfolding events that led to the identification of a previously unknown suspect. *Compare United States v. Johnson, supra,* 626 F.2d at 754–55, with *United States v. Botero, supra,* 589 F.2d at 431.

If the facts had shown that Agent Tucker could have obtained a warrant for McCool's arrest before this episode, the Court would be inclined to hold the arrest illegal under *Payton,* despite the absence of an entry. To uphold warrantless arrests at a person's home whenever law enforcement officers successfully obtain his presence at a door too readily allows subversion of the *Payton* principle. *See United States v. Johnson, supra,* 626 F.2d at 757. In this Court's view, proper deference to *Payton* dictates that warrantless arrests effected even without entry at a suspect's home are generally illegal unless they are the unplanned results of field operations. *Cf. United States v. Blake,* 632 F. 731, 734 (9th Cir. 1980) (emphasizing that a warrant could have been obtained before arrest at suspect's home); 2 W. LaFave, *supra,* at 391–95. In most cases, this principle would allow doorway arrests only when an actual entry would have been justified under "hot pursuit" exigent circumstances. *See generally* LaFave, *supra,* at 386–88. For example, in the instant case the hot pursuit exception would have allowed Agent Tucker to enter McCool's apartment to make the arrest if McCool had not appeared at the door. *See United States v. Holland,* 511 F.2d 38 (6th Cir. 1975). But once McCool appeared at his door and submitted to arrest, a nonconsensual entry was unconstitutional, as the government implicitly acknowledged at the

evidentiary hearing. *See United States v. Kinney, supra.*

Because defendant's warrantless arrest in the doorway of his apartment was the unforeseen result of a field investigation, the Court holds that his arrest was not illegal under *Payton v. New York.* Consequently, the search incident to arrest that led to the retrieval of the keys at issue was constitutional. *See United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Accordingly, upon reconsideration, defendant's motion to suppress the keys is denied.

---

**2.** Even if it were material, this Court would still be persuaded by *Botero,* because Agent Tucker knocked and announced before defendant McCool came to the door.