**UNITED STATES of America**

v.

**Lance Leonard NEVELL, Defendant.**

**No. CR 99–19–JO.**

United States District Court,
D. Oregon.

July 30, 1999.

Thomas G. Lininger, Assistant United States Attorney, District of Oregon, U.S. Attorney's Office, Eugene, OR, for U.S.

Paul J. Papak, Assistant Federal Public Defender, District of Oregon, Federal Public Defender's Office, Portland, OR, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT E. JONES, District Judge.

This case involves a confidential and reliable informant ("CRI"), whom the defendant knows. The CRI provided information to the police that led to an issuance of a search warrant. The police searched defendant's residence and found a marijuana growing operation and seized other incriminating evidence. Defendant argues the search warrant was facially invalid because there was insufficient information provided to establish probable cause. In the alternative, defendant argues that even if probable cause were facially established, omissions of certain facts by the affiant negated probable cause. Defendant argues that because the search and seizure violated his Fourth Amendment rights, all the evidence seized must be suppressed.

### Summary of Facts

In October 1998, the CRI was arrested in Skagit County, Washington, for vehicle theft. The CRI informed the authorities that defendant Lance Nevell loaned the truck to him. The CRI also stated that he would cooperate with law enforcement and that he had information concerning criminal activity in the Salem area.

Detectives with the Salem Area Interagency Narcotics Team ("SAINT") were contacted by Skagit County and spoke with the CRI. SAINT found the information given by CRI concerning various suspects to be accurate. SAINT was informed by the prosecutor in Skagit County that the case against the CRI was very weak. Because of these difficulties, the charges against the CRI were eventually dismissed in December 1998.

In early November 1998, SAINT detectives drove the CRI from Washington to the Salem area and provided food and lodging. The CRI informed SAINT that he was at defendant's residence during the prior month and saw a marijuana growing operation there. SAINT detectives verified through their own investigations that defendant had a prior criminal history with narcotics.

While in Salem, the CRI attempted several times to contact defendant and was successful on two occasions. During their conversation, the CRI did not ask about, nor did defendant mention, marijuana. Three days after meeting defendant, the CRI was beaten by several members of the Gypsy Jokers. Defendant was alleged to be one of those who beat the CRI. The next day, the CRI contacted SAINT and was admitted to the hospital. The CRI stated that his assailants wanted to obtain information on his cooperation with law enforcement officials.

 Based upon statements and diagrams provided by the CRI and verified through independent investigation, SAINT requested and received a search warrant. Officers executed the search warrant a few days later and found a marijuana growing operation that closely matched the description provided by the CRI. The officers also found a letter signed by defendant which stated that he was raising hybrid marijuana and expected profits of $20,000 from the sale. The letter also mentioned that defendant intended to resume purchasing large amounts of marijuana in Arizona. On April 26, 1999, defendant filed the motion to suppress the evidence seized pursuant to the warrant and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[1]

---

1. A *Franks* hearing is merited if the defendant makes a preliminary showing that: 1) the affidavit contained false statements or omissions, made knowingly or with reckless disregard for their falsity; and 2) without the false or omitted statements the affidavit would not establish probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155–156, 98 S.Ct. 2674,

57 L.Ed.2d 667 (1978); *see also United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir.1995). Because the government conceded that the affiant intentionally omitted facts to protect the CRI, the court granted the defendant's request for a *Franks* hearing to evaluate the omissions.

## Discussion

Defendant argues that: 1) the information provided by the CRI contained in the affidavit does not give rise to probable cause and therefore the search warrant is facially deficient; 2) even if probable cause exists based on the incomplete affidavit, the omitted facts, once included in the affidavit, negates probable cause; 3) a "good faith" exception does not apply here; and 4) a *Franks* hearing is required. The defendant argues because the search warrant violated his Fourth Amendment rights, the evidence seized pursuant to that search must be suppressed.

After reviewing the evidence and considering the arguments presented, I find the facts were sufficient to support a finding of probable cause and the omitted facts would not defeat that finding. I will address defendant's arguments below.

### 1. Contention that the Search Warrant Lacked Probable Cause

The standard for determining probable cause from information provided by a CRI is found in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the United States Supreme Court stated that:

> The rigid "two-pronged test" under *Aguilar* and *Spinelli* for determining whether an informant's tip establishes probable cause for issuance of a warrant is abandoned, and the "totality of the circumstances" approach * * * is substituted in its place. * * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Gates*, 462 U.S. at 232–240, 103 S.Ct. 2317. In replacing the old *Aguilar–Spinelli* two prong test, which required both veracity and a basis of knowledge prongs to be satisfied, the Court's "totality of circumstances" approach allowed a strong showing of one prong to offset a weak showing of another so long as the "totality of circumstances" supports a finding of probable cause. *See Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

■ Defendant argues that the information provided in the affidavit was insufficient to establish probable cause because the CRI did not satisfy the "totality of circumstances" test. I reject this argument because I find the affidavit adequately established the CRI's veracity and basis of knowledge.

SAINT officers went to considerable efforts to verify elements of the CRI's information that could be verified without a search warrant. The CRI stated that there was a metal-framed shop near the mobile home. He also stated that defendant did not have the utilities or the mobile home registered under his own name. The CRI provided defendant's unlisted phone number and stated that defendant owned a red Toyota 4–Runner. SAINT was able to corroborate all of this information.[2]

Although the CRI's information that SAINT was able to corroborate was not by itself incriminating, the fact that CRI's story "checked out" increased the probability that CRI's incriminating allegations were also accurate. In *Gates*, the police received an anonymous letter from an informant stating that the defendants were involved in trafficking narcotics from Florida to Illinois. The CRI in *Gates* provided innocuous information such as the dates and times of defendants' arrival and departure, alongside incriminating allegations. The Court found that independent verifica-

**2.** The CRI also stated that there was a diesel engine on the residence used to generate electricity for the marijuana growing operation. SAINT officers did not hear any engine noise during a "walk-by," however, the CRI indicated that the engine was indoors and therefore would be inaudible to SAINT officers during a "walk-by".

tion of CRI's innocuous information by the police gave the issuing magistrate a good foundation to rely on CRI's incriminating allegations in determining probable cause. The Court in *Gates* stated that "because an informant is right about some things, he is more probably right about other facts." *Gates,* 462 U.S. at 244, 103 S.Ct. 2317; *see also Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Accordingly, because the CRI in this case made statements in the affidavit that proved accurate, the magistrate was correct in relying on those statements.

The affidavit also established the CRI's basis of knowledge of defendant's alleged criminal activities. In *Gates,* the Court commented that "a statement that the event was observed first-hand, entitles [the] tip to greater weight than might otherwise be the case." *Gates,* 462 U.S. at 234, 103 S.Ct. 2317. Here, the affidavit in support of the search warrant stated that the CRI was not anonymous but known to SAINT. The affidavit also stated that the CRI had first-hand knowledge of the marijuana growing operation because he recently observed the operation when he visited defendant's property. The affidavit recounted CRI's details of defendant's marijuana growing operation, including sizes and locations of the plants, the method of growth, transfer, and irrigation, the lighting configuration, and drawn diagrams of the mobile home and metal-framed shop. SAINT monitored meetings and discussions between the CRI and the defendant demonstrated that they know each other.[3]

The information provided by the CRI and contained in the affidavit clearly established probable cause for issuance of a warrant. Further, the affidavit adequately establishes CRI's veracity and his basis of knowledge. Therefore, under the "totality of circumstances" test adopted in *Gates,* the issuing magistrate had a substantial

basis for concluding that probable cause existed.

### 2. Contention that Facts Omitted in the Affidavit Negated Probable Cause

Defendant asserts that even if the search warrant was based on information sufficient to establish probable cause, facts omitted from the affidavit, if included, would negate a finding of probable cause. This assertion is without merit.

 The Ninth Circuit has held that omissions in a search warrant affidavit are not fatal unless they are made with an intent to deceive the court, and will not invalidate an affidavit that on its face establishes probable cause. *See United States v. Botero,* 589 F.2d 430, 433 (9th Cir.1978); *see also United States v. Hole,* 564 F.2d 298 (9th Cir.1977). I find no intention of misleading or deceiving the court in the affiant's attempt to obtain a search warrant. The majority of the omitted facts discussed below were motivated by the affiant's desire to protect the identity of the CRI. Omissions of facts that were based on safety concerns were valid. *See United States v. Williams,* 989 F.2d 1061, 1066–1067 (9th Cir.1993). I find affiant totally credible. I further find the remaining facts omitted were either irrelevant or unknown to affiant.

I will discuss each set of omission below:

### A. Information About the CRI's Salem Legal Problems:

1. *The CRI had recently been involved in a hit and run accident;*

2. *The CRI ran from the scene and eluded the police;*

3. *The CRI was under investigation for that incident and wanted for questioning.*

Defendant was aware that CRI had been in this accident and the circum-

---

**3.** When SAINT officers conducted the warrant search of defendant's property, they found the marijuana growing operation and

methods that closely matched the descriptions and diagrams given by the CRI in the affidavit.

stances surrounding it. If these facts were included in the affidavit, defendant would have been able to identify the CRI.

4. *The CRI used the false name of Chris Panner in connection with that case.*

The record demonstrates that the affiant did not know that CRI used a false name in connection with the Salem hit and run case, and therefore this omission is irrelevant.

**B. Information About the CRI's Washington Legal Problems:**

1. *The CRI was in jail charged with transporting a stolen vehicle and driving with a suspended license at the time he contacted Oregon authorities and expressed an interest in becoming an informant;*

2. *The CRI wrecked the stolen vehicle in Washington, ran from the scene and eluded police;*

3. *The CRI said that defendant gave him the stolen vehicle and that CRI did not know that it was stolen.*

Defendant knew of the circumstances surrounding the CRI's legal problems in Washington. Furthermore, the CRI spoke with defendant while incarcerated in Washington. These facts were omitted to conceal the identity of the CRI to defendant.

4. *All charges against the CRI in Washington would be ultimately dismissed.*

The affiant could not have known the charges against the CRI were dismissed because the evidence shows that the charges were ultimately dismissed one month after the warrant was issued.

**C. Information About the CRI's Arizona Legal Problems:**

1. *The CRI had a restricted warrant for aggravated DUI in the State of Arizona.*

The affidavit revealed that the CRI had a felony conviction for DUI in Arizona. The affiant omitted the restricted warrant because the aggravated DUI warrant was serviceable only in Arizona. This fact would be irrelevant to the magistrate's determination of probable cause.

2. *The CRI had experience as an informant in Arizona but fought with a suspect.*

Because the suspect that the CRI fought with was a member of defendant's family, this fact was omitted in the affidavit to protect the CRI's identity.

3. *The CRI disappeared from Arizona without telling authorities where he was going, and they feared he was dead.*

■ The CRI had previously been an informant in a narcotics investigation in Arizona but was classified as inactive after he disappeared without informing investigators. This omission is troubling because this fact may undermine the CRI's credibility under the "totality of circumstances" test. However, the affiant contacted a special agent who worked with the CRI in Arizona for information regarding the CRI and the agent stated that CRI did not have any reliability or honesty-related issues. The affiant understood from his conversation with the special agent that the CRI's inactive status was not based on his credibility. The omission of this fact is not fatal to the probable cause analysis. The affidavit, including this omitted fact, would still support a finding of probable cause.

**D. Information About the CRI's Track Record as an Informant:**

1. *At the time affiant prepared his affidavit, the CRI had established no history or reliability as an informant.*

I find this alleged omission is untrue. As I have discussed earlier, the affiant did independently verify statements made by the CRI and found him to be reliable.

2. *Affiant failed to follow standard operating procedures of both SAINT and the Salem police department's use of the Western States Information Network ("WSIN") to check on the reliability of a potential confidential informant.*

■ This alleged omission is also untrue because SAINT's standard operating procedure required affiant to enter data regarding the CRI into the WSIN but the affiant was not required to check WSIN regarding the CRI. Additionally, affiant directly contacted agents who worked closely with the CRI previously in Arizona, and received information regarding CRI's reliability.

3. *The CRI had problems as an informant in Arizona, misled the police, and left Arizona with authorities believing he was injured or dead.*

This omission was discussed previously in Part C, supra.

**E. Information About the CRI's Motivation to Provide Information and His Incentive to Exaggerate or Distort the Truth:**

1. *Affiant was aware that the CRI was angry at defendant for allegedly providing him with a stolen truck that ultimately led to the CRI's incarceration in Washington.*

The CRI's animosity was not remarkable or to the extent that it would require the affiant to state this in his affidavit. This court, as well as magistrates who are issuing search warrants, are conscious that many CRIs harbor animosity towards those whom they incriminate. Therefore, this alleged omitted fact is irrelevant.

2. *Affiant was also aware that the CRI had expressed extremely bad feelings towards defendant over an alleged beating that occurred only days before the affidavit was prepared.*

All of the information regarding the marijuana growing operation and other incriminating details needed for the affidavit were given by the CRI prior to the alleged beating.[4] Therefore the CRI's bad feelings towards defendant after the alleged beatings were irrelevant to the truthfulness of CRI's statements.

4. A polygraph test was administered to the CRI after the alleged beating but no new information regarding the defendant's mari-

3. *The CRI was in jail in Washington pending charges at the time he expressed interest in becoming an informant;*

4. *The CRI was under investigation in Oregon for charges of hit and run at the time he agreed to become an informant.*

As discussed previously, the CRI's incarceration in Washington and the incident in Oregon were well known to defendant and these facts were omitted by affiant to protect CRI's identity.

5. *The CRI was paid for his services.*

Many CRIs receive monetary support for their cooperation, and the funds given to this CRI covered his expenses but did not otherwise pay the CRI for his cooperation. This information is irrelevant.

**F. Information About the CRI's Drug Involvement:**

1. *The CRI had been involved in previous marijuana grows.*

I find this argument to be untrue because the affidavit included the CRI's knowledge of how marijuana is grown, packaged, and sold.

2. *The CRI had involvement in transporting in excess of 200 pounds of marijuana.*

The CRI assisted family members in transporting marijuana, and therefore this fact was omitted to protect the CRI's identity.

3. *The CRI was a methamphetamine user and, prior to his arrest in Washington, had used methamphetamine for 14 consecutive days.*

The affiant listed CRI's marijuana use but omitted CRI's methamphetamine use in the affidavit. This additional drug use information would not affect the finding of probable cause and the omission was therefore irrelevant.

juana growth operation was obtained through the testing.

**G. Information About Failed Attempts to Corroborate the CRI's Information.**

1. *The CRI made monitored phone calls to defendant that did not produce information about marijuana grows;*

2. *The CRI met with defendant while wearing a body wire and the transcript of that meeting provides no evidence corroborating the CRI's information and suggests the lack of credibility of the CRI.*

■ These facts were omitted in the affidavit to protect the CRI's identity. Although during monitored conversations no discussion of a marijuana growth took place, this does not suggest a lack of credibility as the defendant asserts. On the contrary, the casual and intimate tone of the conversation between the CRI and the defendant suggests that they are very familiar with one another and therefore strengthens the CRI's basis of knowledge under a "totality of circumstances" test.

3. *Affiant subjected the CRI to a polygraph but failed to advise the magistrate that the polygraph was conducted by an intern and that one of the three indicia of truthfulness could not be measured.*

There are enough facts in the affidavit to support a finding of probable cause even if this fact had been included to challenge the validity of the polygraph test. Therefore the inclusion of this fact would have been irrelevant because it would not have affected the finding of probable cause.

4. *Affiant did a walk-by at defendant's residence and saw no evidence of marijuana growth, did not smell marijuana, and did not hear any sound attributable to a diesel engine.*

Because the affidavit indicated that defendant's marijuana growth was indoors, the fact that the affiant did not see nor smell the growth was irrelevant to the probable cause determination. The fact that the affiant did not hear any engine noise is also irrelevant because the engine would be inaudible to the affiant during a walk-by.

5. *Affiant made no inquiry and had no information indicating that defendant lived at, owned or rented the home to be searched.*

This allegation is not true. I find that affiant did make inquiries and had information that would lead him to believe that defendant resided at the property to be searched.

## CONCLUSION

I find that there were substantial facts in the affidavit for the magistrate to conclude that probable cause existed under the "totality of circumstances" test. Although facts were omitted, the omissions are irrelevant and do not negate a finding of probable cause.[5] Therefore the issuance of the search warrant was valid and did not violate defendant's Fourth Amendment rights. Accordingly, the motion to suppress the evidence seized pursuant to that search warrant is hereby DENIED.

---

[5]. Because I find that there is substantial evidence to support a finding of probable cause and that the omissions of certain facts do not defeat that finding, the issue of the "good faith" exception need not be addressed here.