UNITED STATES of America,
Plaintiff-Appellee,

v.

Sammy Don BLALOCK,
Defendant-Appellant.

No. 76–3522.

United States Court of Appeals,
Ninth Circuit.

July 10, 1978.

Jan Edward Ronis (argued), of Ronis & Ronis, National City, Cal., for defendant-appellant.

Michael L. Lipman, Asst. U. S. Atty. on the brief, Terry J. Knoepp, U. S. Atty., Michael L. Lipman, Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee.

Before BROWNING and ELY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

## THE APPEAL:

The defendant-appellant Sammy Don Blalock (Blalock) appeals his judgment of conviction and sentence to custody entered by the District Court on November 8, 1976 for heroin trafficking in violation of 21 U.S.C. § 841(a)(1). We note jurisdiction under 28 U.S.C. §§ 1291 and 1294, and affirm.

## PROCEEDINGS IN THE DISTRICT COURT:

Blalock was indicted by a grand jury on one count charging possession of heroin with intent to distribute in violation of § 841(a)(1). Blalock moved to suppress as evidence heroin recovered, pursuant to a search warrant, from a locked black metal box previously seized within Blalock's business premises. The District Court denied the motion. Blalock waived jury trial and the District Court tried and convicted Blalock upon written stipulated facts based upon evidence developed at the hearing upon the motion to suppress. Blalock is at liberty upon bail.

## ISSUES ON REVIEW:

Blalock presents eight questions; however, we are satisfied that the following issues are the decisive issues on review:

1. Whether the arrest of Blalock within his business premises was lawful.

2. Whether the warrantless seizure of a locked black metal box from Blalock's business premises and later found to contain heroin was lawful.

3. Whether the search warrant to open the locked black metal box was legally sufficient.

## FACTS:

The pertinent undisputed facts as gleaned from the record of the District Court's hearing on the motion to suppress are:

Special agents (Agents) of the Government's Drug Enforcement Administration had known Blalock to be a drug trafficker within the National City, California area from as early as 1972. They also knew that Larry Harvey (Harvey) was close to the drug traffic in that area.

Harvey advised the Agents that he had known Blalock quite awhile and Blalock had indicated he was willing to sell heroin to Harvey's customers. Harvey further stated that he had made a prior transaction with Blalock for some people from Canada, and he felt if he told Blalock that these people were coming back and wanted a large amount of narcotics that Blalock would make another deal.

Accordingly, the Agents utilized Harvey for a week or ten days prior to June 14, 1976 as a go-between in negotiations for an undercover agent's purchase of heroin from Blalock. As negotiations progressed, Blalock on several occasions insisted he would not meet anyone but Harvey. The Agents decided to go ahead with the purchase by Harvey. Harvey made arrangements with Blalock to make the deal on June 14. Several telephone calls by Harvey for Blalock

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

on June 14 culminated in a telephone call by Harvey to Blalock at his wheel alignment shop (shop) in National City at approximately 4:00 p. m. Harvey told Blalock that the people were agreeable to not meeting him, but that they wanted Harvey to see the drugs before they would give him the money. Blalock replied, "All right, come over to the shop. There is something I want to talk to you about." The Agents monitored the telephone conversations and arranged surveillance of the shop and back-up teams. Agent Dersham drove Harvey to the area of Blalock's shop. Harvey entered the shop and in approximately ten minutes returned to Dersham's vehicle. He reported to Dersham that Blalock had taken a brown paper bag from underneath a counter located at the back of the front area of the shop, removed a padlocked black metal box, opened, removed and showed to Harvey four condoms containing brown powder. Harvey recognized the contents as heroin. Blalock returned the four condoms to the black box, relocked it, placed it in the brown bag, and put it under the counter about halfway down its length. Blalock stated he was going to leave the shop with the heroin in five minutes and arranged to meet Harvey at a named restaurant in National City at approximately 5:30 p. m.

Dersham radioed the information given to him by Harvey to the Agents' surveillance team with instructions that the team should secure the shop immediately. Agents Miller and Smith, members of the surveillance or backup team, immediately entered the shop through the open customer's entrance during business hours and asked for Blalock. Blalock identified himself and was placed under arrest. One employee was also present in the front room; a second employee was later found in a back room. Miller placed Blalock spread eagle against a wall for a few seconds for a cursory search and advice of *Miranda* rights. Blalock was then placed spread eagle at the end of the counter with his hands on the counter surface for a thorough search of his person. A key was taken from Blalock's right hand. During this time Agent Conklin, who had also heard Dersham's radioed message, entered the shop and made an eyeball search for hidden persons in the shop. While Blalock was being searched at the end of the counter, Conklin checked behind it and observed in plain view a brown bag on an open shelf midway under the counter and approximately four feet fron Blalock. Conklin placed the bag on top of the counter, removed some currency and the locked black metal box. Upon telephone advice of the U. S. Attorney, the Agents did not open the box but took possession of it, pending the issuance of a search warrant which was later secured from a Magistrate. The key taken from Blalock was then used to open the box wherein the challenged evidence was found.

DISCUSSION:

*Issue 1:*

 We recognize that the Agents' entry into the shop and their immediate arrest of Blalock were warrantless. However, the Agents held statutory authority to make warrantless felony arrests on probable cause to believe the commission of a felony. 21 U.S.C. § 878. *United States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Although the Supreme Court has expressed a preference for the use of arrest warrants when feasible, it has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975), citing *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Probable cause can be predicated upon informant information which has been corroborated by the investigating agents. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Moreno,* 569 F.2d 1049 at 1051 (9th Cir. 1978); *United States v. McLaughlin,* 525 F.2d 517, 520 (9th Cir. 1975); *United States v. Curran,* 498 F.2d 30, 34 (9th Cir. 1974); *United States v. Archuleta,* 446 F.2d 518, 519–20 (9th Cir. 1971); *United States v. Ardle,* 435 F.2d 861, 862–63 (9th Cir. 1970), *cert. denied,* 402 U.S. 947, 91 S.Ct. 1638, 29 L.Ed.2d 116 (1971).

■ We find that the record fully supports the District Court's finding of reliability on the part of Harvey and further corroboration through the Agents' monitoring of Blalock's own words and statements. When Harvey saw the heroin in Blalock's possession during negotiations for a purchase and reported that to the Agents, probable cause rose to a clarion call for the securing of the shop and arrest of Blalock. Armed with probable cause, the Agents' warrantless arrest of Blalock was lawful since it was consummated in his business establishment during business hours. *Watson.* Blalock "was not in an area where [he] had any expectation of privacy." *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976), citing *Watson.*

We do not reach the Government's contention that the arrest of Blalock was lawful on the grounds of the presence of exigent circumstances. *See Watson,* 423 U.S. at 417, 96 S.Ct. 820.

*Issues 2 and 3:*

The Government contends that Conklin's warrantless seizure of the black box was justified under the several doctrines of (a) plain view seizure, (b) seizure under exigent circumstances, and (c) seizure incident to a valid arrest. Since we are satisfied that the seizure of the black box was justifiable under the plain view rationale, we deem it unnecessary to consider the other asserted justifications.

■ The primary requisite for the application of the plain view doctrine is that the police officer has a right to be where he is when he sees the evidence. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Cooks,* 493 F.2d 668, 670 (7th Cir. 1974). We have held that the Agents lawfully entered the shop for the purpose of a lawful arrest. Conklin was lawfully behind the counter for the purpose of flushing out and securing hidden persons.[1] *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). That circumstance obviates the inadvertence requirement[2] of *Coolidge. United States v. Morell,* 524 F.2d 550, 555–56 (2d Cir. 1975).

In *Morell,* an informant negotiated with the defendants for the purchase of cocaine. When he went to the defendants' store to consummate the deal, the agents gave him a signal to give if the drugs were present. After seeing the narcotics, the informant signaled the agents, who entered the store and arrested the informant and one defendant. The informant then indicated that the

---

1. We emphasize that all the events took place in the front of Blalock's shop. Further, Agent Conklin's search for accomplices was limited to a quick check behind the counter and hence was not the general exploratory search for evidence condemned in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This Circuit has previously approved warrantless searches exceeding the scope permitted incident to arrest where limited and conducted for the purpose of preventing harm to the arresting officers. *United States v. Mulligan,* 488 F.2d 732, 734–35 (9th Cir. 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974). Other circuits have approved quick cursory searches conducted for the purpose of protecting arresting officers. *United States v. Briddle,* 436 F.2d 4, 7–8 (8th Cir. 1970) *cert. denied,* 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 24 (1971). *See also United States v. Cepulonis,* 530 F.2d 238, 244 (1st Cir.) *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 834 (1976); *United States v. Sellers,* 520 F.2d 1281, 1284 (4th Cir. 1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976);

*United States v. Blake,* 484 F.2d 50, 57 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); and *United States v. Looney,* 481 F.2d 31, 33 (5th Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973). *But see United States v. Carter,* 173 U.S.App.D.C. 54, 64, 522 F.2d 666, 676 (1975); and *United States v. Gamble,* 473 F.2d 1274, 1276–77 (7th Cir. 1973).

2. "The second limitation is that the discovery of evidence in plain view must be inadvertent. The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intent to seize it, the situation is altogether different." *Coolidge v. New Hampshire,* 403 U.S. 443, 469–70, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971).

drugs were in the basement, whereupon an agent went down to the basement, arriving in time to see the second defendant exiting and being apprehended by fellow officers. On his way back upstairs, the agent saw the bag of drugs, which he then seized. The defendants argued that the seizure could not be justified because it was not inadvertent. The Court rejected this argument holding that the inadvertence requirement was not applicable since the primary motive for the entry was to make valid arrests. *Id.* at 556. *See also United States v. Artieri,* 491 F.2d 440, 443 (2d Cir.), *cert. denied,* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974); *United States v. Lisznyai,* 470 F.2d 707 (2d Cir. 1972), *cert. denied,* 410 U.S. 987, 93 S.Ct. 1516, 36 L.Ed.2d 184 (1973).

Blalock's reliance upon *United States v. Griffith,* 537 F.2d 900 (7th Cir. 1976), and *United States v. Cooks* is misplaced. Unlike in this case, the agent in *Griffith* had no idea what was contained in the plain view open paper bag prior to seizure and inspection of the contents. In *Cooks,* the agents had made an *unlawful* warrantless entry.

█ Here Conklin did not have to make a look-see to determine the contents of the brown paper bag under the counter. He had already been told and had probable cause to believe the bag contained heroin. The fact that the heroin per se was not visible because of the opaqueness of the brown bag does not preclude the application of the plain view rationale. The inescapable nexus between the brown bag and the purpose of the Agents' entry and arrest of Blalock is too obvious to play riddle games. *See United States v. Valentin,* 569 F.2d 1069 at 1070 (9th Cir. 1978). *United States v. Blake,* 484 F.2d 50, 57 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

Conklin would have been derelict in his duty had he not seized the brown bag, reasonably believed to contain the contraband heroin, pending lawful search.

Furthermore, the Agents knew of the box and its contents before entering the store. They formed the intent to search the box and seize its contents prior to the entry. The information upon which the warrant was issued was secured prior to the seizure of the box. Nor can the discovery of the locked box containing the heroin be said to be the product of a warrantless search by Agent Conklin. The Agents knew the exact location of the box before entering the store. The only effect of Conklin's intervention was to shift the box from one area under federal control—the store following Blalock's arrest—to another area under federal control—the magistrate's office. This shift in the location of the box containing the heroin did not significantly advance the investigation or further the issuance or execution of the warrant itself. Even assuming Agent Conklin's activity was unlawful, it bore no fruit. *Olsen v. Ellsworth,* 438 F.2d 630, 631–32 (9th Cir.), *cert. denied,* 405 U.S. 1040, 92 S.Ct. 1319, 31 L.Ed.2d 580 (1971).

█ The locked box was only opened and the heroin seized under the authority of a search warrant. The search warrant was properly issued upon a sufficient showing of probable cause. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Blalock argues that the issuance and execution of the warrant was somehow tainted by Conklin's retrieval of the brown bag from the shelf under the counter. However, it is evident from the record that Conklin's conduct had no factual relationship either to the issuance of the warrant or to its execution.

The District Court's judgment of conviction and sentence to custody is affirmed.

Enlargement on bail is revoked now. The Clerk will issue the mandate forthwith. No petition for rehearing will be entertained. Federal Rules of Appellate Procedure 2.

AFFIRMED.