## No. 80SA209

## The People of the State of Colorado v. Danny Joseph Burns

(615 P.2d 686)

Decided August 18, 1980.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, Donald Eberle, Deputy, for plaintiff-appellant.

Davies and Saint-Veltri, Robert J. Driscoll, for defendant-appellee.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

The defendant has been charged with second-degree burglary.[1] In this interlocutory appeal, filed pursuant to C.A.R. 4.1, the People challenge the district court's order granting the defendant's motion to suppress evidence and statements obtained at the time of the defendant's arrest, as well as the in-court identification of the defendant by a prosecution witness. We reverse the district court's order.

This appeal arose from the following facts. On November 28, 1978, at approximately 3:30 a.m., the owner of the Jolly Feast restaurant in Denver, Mr. Daddis, was informed that the burglar alarm at his restaurant had sounded. Daddis and a friend drove to the restaurant and parked their car in a position from which they would be able to see the front and back doors of the building. A few moments later, three men came out the front door. Daddis recognized one of the men, the "tall guy," as a patron

---

[1] Section 18-4-203, C.R.S. 1973 (now in 1978 Repl. Vol. 8).

of the restaurant, although he could not remember his name.

The police arrived within a few minutes, and Daddis told them that he had recognized the tall man and that his janitor, who lived in an apartment house behind the restaurant, knew that man. The police and Daddis went immediately to the janitor's apartment. After being given a description of the tall man by Daddis, the janitor identified him as "Danny" and stated that he lived in a nearby apartment.

The police officers, accompanied by Daddis, went to the apartment to which they had been directed, knocked on the front door, and identified themselves. After a short time, the defendant opened the door, and Daddis immediately identified him as the man he had described to the police as the "tall guy."

The defendant was arrested while standing in the doorway of his apartment, was searched for weapons, and was then allowed to go back into his apartment with one of the officers to obtain his clothes.

The defendant initially moved to suppress all physical evidence removed from his person or apartment[2] at the time of his arrest, and any statements made by him at that time, on the grounds that the arrest was illegal. At the hearing held on the defendant's motion, he further requested that the court suppress any in-court identification of him by Daddis. In support of his motions, he argued that, in the absence of an arrest warrant, his arrest was illegal, and that the identification by Daddis violated his due process rights.

A hearing was held, and the district court granted the defendant's motions, finding that: (1) the warrantless arrest was illegal and in violation of the defendant's constitutional rights; (2) Daddis would not be permitted to testify at trial concerning any of the events subsequent to the time at which he saw the three men leave the restaurant; (3) Daddis would not be permitted to make an in-court identification of the defendant because the illegal arrest tainted his identification at the scene of the arrest.

The People advance two arguments on appeal. First, they contend that the trial court erred in finding that the arrest of the defendant was illegal. Second, they argue that, regardless of the propriety of the arrest, the trial court mistakenly applied the exclusionary rule to evidence obtained prior to that arrest.

I.

*The Warrantless Arrest*

■ In this case, we are required to determine whether the warrantless arrest of the defendant, effected while he was standing in the doorway

---

[2] Because no physical evidence was in fact removed from the defendant's person or apartment, this portion of the suppression motion is not at issue here.

of his apartment, violated the constitutional provisions forbidding unreasonable seizures.[3] The arrest without a warrant is presumed to have been unconstitutional, and the People have the burden of rebutting that presumption by showing both that the arrest was supported by probable cause, *DeLaCruz v. People,* 177 Colo. 46, 492 P.2d 627 (1972), *People v. Feltch,* 174 Colo. 383, 483 P.2d 1335 (1971), *People v. Valdez,* 173 Colo. 410, 480 P.2d 574 (1971), and that it fell within a recognized exception to the warrant requirement, *People v. Williams,* 199 Colo. 515, 613 P.2d 879 (1980).

The same constitutional standards for determining probable cause apply whether a search or an arrest is being made by the police. These standards are applicable whether or not the police have obtained a warrant. *People v. Vaughns,* 182 Colo. 328, 513 P.2d 196 (1973). In *People v. Vigil,* 198 Colo. 185, 597 P.2d 567 (1979), we stated that:
"a warrantless arrest is authorized [*i.e.,* supported by probable cause] if the information possessed by the arresting officer is sufficient to warrant a reasonably cautious and prudent police officer in believing, in light of his training and experience, that an offense has been committed and that the person arrested committed it." *Id.,* 198 Colo. at 187, 597 P.2d at 569.
Here, the arresting officers arrived at the scene of the burglary a few minutes after the offense occurred. They obtained a physical description, from the victim, of one of the men seen leaving the restaurant. In addition, although the victim could not remember the name of the man he identified, he knew that one of his employees was acquainted with that man and might know his name and where he lived. The officers continued their investigation and, when they were told the name and address of the individual identified by the victim, they went to that address, knocked on the front door, and identified themselves. When the defendant opened the door of his apartment and was immediately identified by the victim, the police had probable cause, as delineated in *Vigil, supra,* to arrest the defendant.

Further, the warrant requirement is excused in this case because the defendant was arrested while standing in the open doorway of his apartment, where he was "as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his apartment]" and where he therefore had no expectation of privacy within the scope of the Fourth Amendment. *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305 (1976), *citing United v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); section 16-3-102(1)(c), C.R.S. 1973 (1978 Repl. Vol. 8).

---

[3] *U.S. Const.* amend. IV; *Colo. Const.* Art. II, Sec. 7.

## II.
### The Pre-Trial Confrontation Between
### Daddis and the Defendant

At the suppression hearing, defense counsel argued that the pre-trial confrontation between Daddis and the defendant which occurred immediately prior to the latter's arrest was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to constitute a violation of the due process clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment. *See Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). The trial court suppressed both Daddis' testimony about the pre-trial confrontation and his in-court identification of the defendant based on that confrontation.[4] We conclude that the trial court erred in suppressing Daddis' testimony and in-court identification.

It is true that one-on-one confrontations for the purpose of pre-trial identification of criminal suspects are not favored, but they are not *per se* violative of due process. *Roper v. Beto,* 454 F.2d 499 (5th Cir. 1971); *People v. Williams,* 183 Colo. 241, 516 P.2d 114 (1973). In this case, our review of the totality of the circumstances surrounding the arrest of the defendant and the police conduct which led to his identification by Daddis indicates that the defendant's due process rights have not been denied. The victim assisted the police throughout their investigation. It was the victim who first identified the defendant prior to the arrest, and there is no indication that the police suggested to him that they harbored independent suspicions as to the defendant's involvement in the robbery. Only a short time period elapsed between the crime and the identification of the defendant. At the outset of the investigation, the victim described the defendant to the police and stated that he had recognized him as a patron of the Jolly Feast restaurant. In these circumstances, we find the one-on-one pre-trial confrontation to have been fully justified, and any suggestiveness in the confrontation countervailed, by the necessity for the police "swiftly to determine whether they were on the right track, so that they could properly deploy their forces," by the interest in "sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them," and by the slight probability of misidentification of the defendant by Daddis.

---

[4] The suppression was ordered at least partially on the grounds that the pre-trial confrontation between Daddis and the defendant had been tainted by what the trial court considered to have been an illegal arrest of the defendant. See Part I of this opinion, *supra.* However, we have held that the arrest violated neither the Fourth Amendment nor the comparable provision of the Colorado Constitution. Therefore, the conduct of the police in effecting the arrest provides no occasion for application of the exclusionary rule to Daddis' in-court identification of the defendant. Moreover, we note that the pre-trial confrontation occurred *prior to* the arrest of the defendant, and that the arrest could not in any event have constituted a proper basis for application of the exclusionary rule to the in-court identification.

*Simmons v. United States,* 390 U.S. 377, 384-385, 88 S.Ct. 967, 971-972, 19 L.Ed.2d 1247, 1253-1254 (1968). *See also Stovall v. Denno, supra; United States v. Jones,* 517 F.2d 176 (D.C. Cir. 1975); *United States v. Perry,* 449 F.2d 1026 (D.C. Cir. 1971); *People v. Williams, supra.*

The district court's order granting the defendant's suppression motion is reversed.