**Jerry O. MOWRER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 4–782A164.

Court of Appeals of Indiana, Fourth District.

April 19, 1983.

Rehearing Denied May 27, 1983.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia Sue Stanley, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

After a bench trial, defendant-appellant Jerry O. Mowrer was convicted of possession, with intent to deliver, of lysergic acid diethylamide, a Class B felony [1], and possession, with intent to deliver, of diazepam, a Class C felony [2].

He appeals, asserting the following errors:

1) The court erroneously refused to suppress evidence obtained from the illegal arrest of the appellant.

2) The court erroneously refused to suppress evidence gathered in a search of the appellant's hotel room pursuant to an invalid search warrant.

3) The evidence was not sufficient to support the trial court's judgment.

---

1. Ind.Code 35–48–4–2.

2. Ind.Code 35–48–4–3.

Because Mowrer's arrest and the subsequent search of his room were illegal under the Fourth Amendment limits on search and seizure, we do not reach the sufficiency issue. We reverse.

The facts most favorable to the trial court's judgment are as follows: About February 27, 1980, an informant told Det. Sgt. Michael Bolin, an Indiana State Police narcotics officer, that an unnamed individual would soon come from California to Indiana to sell L.S.D. to one Roy Burger of Jasper, Indiana. On March 4, 1980, Det. Sgt. Richard Badics, a South Bend police officer, told Officer Bolin that an informant had told him that one Jerry Mowrer would be coming to Indianapolis from Westminster, California on March 5 to sell L.S.D. to someone named Burger. Checking Indianapolis hotels after these tips, the police learned that a J. Mowrer was registered in Room 1922 of the Hyatt Regency Hotel in Indianapolis. Bolin, Badics, and four other Indiana State Police officers went to the hotel and began watching Room 1922 from an adjoining room. This surveillance began at 3 a.m. on March 5, 1980. At 1:26 that afternoon, the officers saw Mowrer leave the room and enter the elevator, returning two minutes later with two other men. The three reentered Room 1922. At this point, the six officers positioned themselves outside the door of Room 1922. When, at 2:20, one of the room's occupants opened the door to leave, the officers burst into the room and arrested the four men they found inside. In the room, the officers observed a white powder residue on the table and the dresser and three suitcases near the door. In a search incident to the warrantless arrest, the officers found a key to one of the suitcases in Mowrer's pocket. The officers then obtained a search warrant for the room and the suitcases. In one suitcase (which could be unlocked with Mowrer's key) they found thousands of L.S.D. and Diazepam tablets. In another suitcase, which the defendant admitted he owned, they found $7,000.00 and more Diazepam.

Mowrer first challenges the use of evidence seized in the search incident to his warrantless arrest. He claims that the arrest itself was illegal because it was made without a warrant.[3] In support of this claim, Mowrer cites the recent Supreme Court decision in *Payton v. New York,* (1980) 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.[4] In *Payton,* the Court held that, absent exigent circumstances, an officer may not enter a suspect's home to make an arrest without a warrant. Noting that intrusions into the home are "the chief evil against which the wording of the Fourth Amendment is directed," *id.* 445 U.S. at 585, 100 S.Ct. at 1379, the Court said, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. at 1382. Relying on *Payton,* Mowrer argues that he was illegally arrested, since the arrest was made in his hotel room without a warrant.

 The first issue raised by this contention is whether Mowrer's hotel room was his "home" within the meaning of *Payton.* Clearly, the warrant requirement of *Payton* does not extend to all premises in which a person has a reasonable expectation of privacy.[5] Thus, the question is not whether Mowrer had a reasonable expectation of privacy in his room, but whether he had the *same* expectation of security from intrusion as he would have had in his own home. *United States v. Bulman,* (11th Cir.1982)

---

3. The general rule that an arrest warrant is *always* required, absent exigent circumstances, *Pawloski v. State,* (1978) 269 Ind. 350, 380 N.E.2d 1230, has been abrogated. *Funk v. State,* (1981) Ind., 427 N.E.2d 1081. Police officers may make a warrantless arrest in a public place so long as they have probable cause to believe the suspect has committed a felony. *Id.* at 1085.

4. Although Mowrer's arrest took place several weeks before *Payton* was decided, the holding of *Payton* must be applied retroactively. *United States v. Johnson,* (1982) —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202.

5. The warrant requirement for an arrest is thus less stringent than for a *search* of the suspect's premises. *See Katz v. United States,* (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

667 F.2d 1374, 1383, *cert. denied sub nom.
Howard v. United States,* (1982) —— U.S.
——, 102 S.Ct. 2305, 73 L.Ed.2d 1307. Other courts have uniformly found that a person's hotel room is a "home" for Fourth Amendment purposes. *United States v. Bulman, supra; Scroggins v. State,* (Ark. 1982) 276 Ark. 177, 633 S.W.2d 33; *Engle v. State,* (Fla.Dist.Ct.App.1980) 391 So.2d 245; *People v. Eichelberger,* (1982) 91 Ill.2d 359, 63 Ill.Dec. 402, 438 N.E.2d 140, *cert. denied,* (1983) —— U.S. ——, 103 S.Ct. 383, 74 L.Ed.2d 514; *State v. Holtz,* (Iowa 1981) 300 N.W.2d 888; *State v. Pool,* (N.M.App. 1982) 98 N.M. 704, 652 P.2d 254. In this case, Mowrer had spent the night in the room and ate a meal there just before the arrest. Mowrer's hotel room was clearly his transitory home.

The dissent contends, however, that Mowrer lost this Fourth Amendment protection by doing business—allegedly selling drugs—in his room. The warrant requirement for in-home arrests has been held not to extend to an arrest on the suspect's business property, even where the place was not open to the public. *United States v. Blalock,* (9th Cir.1978) 578 F.2d 245 (arrest in suspect's shop during business hours); *United States v. Ponce,* (S.D.N.Y.) 488 F.Supp. 226 (arrest in a warehouse). These cases are, however, distinguishable from the present one. First, unlike the suspect's shop in *Blalock, supra,* Mowrer's hotel room was not held open to the general public during business hours. Further, and more importantly, Mowrer's room was his residence, whereas the premises in *Ponce* and *Blalock, supra,* were used solely for business. The point of these cases is that *purely* commercial premises are, by definition, *not* residential. There is no support in these cases, or in any others we have found, for the proposition that a home ceases to be a home under the Fourth Amendment when the occupant does business in it.[6] Because the alleged drug sale here had no effect on Mowrer's reasonable expectation of security from arrest in his room, we hold that his

hotel room was his "home" within the meaning of *Payton.*

■ The State argues that *Payton's* warrant requirement should not be applied in this case because "the arrest occurred as the persons in the room were attempting to exit the hotel room," so that there was "no indication of any privacy or security expectation on the part of defendant and the others." The State cites no authority, but the allusion is apparently to cases such as *United States v. Santana,* (1976) 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300, in which the Court upheld the arrest of a suspect as she stood in her doorway. In so holding, the Court reasoned that Santana was essentially in a "public" place: "[s]he was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42, 96 S.Ct. at 2409. Since *Santana,* a number of cases have also upheld arrests made when the suspect came to the door after the police had knocked and identified themselves. *United States v. Botero,* (9th Cir.1978) 589 F.2d 430, *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *People v. Burns,* (Colo.1980) 200 Colo. 387, 615 P.2d 686. The principle of these cases seems to be that the constitutional protection of the home does not extend to those who voluntarily expose themselves to seizure by stepping into the open doorway. In this case, however, there was no evidence that the defendant voluntarily exposed himself to seizure. One officer described the arrest as follows:

Q. What happened then?

A. The door opened to room 1922 and as the door became unlatched, we burst into the room and announced ourselves as police officers and arrested everyone in the room.

Q. How did the door open; did you open the door?

A. No, the door was opened from someone inside in the room.

Court held that *Payton* applied without discussing the significance of the suspect's use of the room for his "business."

---

6. The only case we have found dealing with a drug sale in a hotel room is *People v. Eichelberger, supra.* In that case, the Illinois Supreme

The testimony of another of the arresting officers was similar:

Q. Well, what time did you make the arrest?

A. At approximately 2:20 p.m.

Q. And that was at a time when Mr. Beck and Mr. Haller were exiting Room # 1922?

A. Yes.

Q. Did they get out into the hall?

A. No.

Thus, it is undisputed that Mowrer was not found standing in the doorway; nor did he expose himself to arrest voluntarily. Rather, as the door opened, the arresting officers burst unannounced into the room. By doing so, they crossed the "firm line" which the Fourth Amendment "draws at the entrance to the house." This is precisely the sort of arrest that cannot be made without a warrant under *Payton.*

■ The State argues, however, that the warrant requirement should not be applied to this case because exigent circumstances prevented the arresting officers from getting a warrant. No warrant is required where exigent circumstances make procuring a warrant impracticable. *Harrison v. State,* (1981) Ind.App., 424 N.E.2d 1065, 1068. In this case, the arresting officers had gotten the tip implicating Mowrer on March 4, 1980, and had located him in his hotel by 3 a.m. on March 5. The arrest occurred at 2:20 that afternoon. Thus, the police had the information allegedly constituting probable cause for the arrest for nearly twelve hours prior to the arrest. This arrest took place on a weekday, in a hotel not far from the Marion County courts; one of the six officers watching Mowrer's room could easily have gotten a warrant after the courts opened. Nothing in the record supports a finding that Mowrer would have escaped or destroyed the evidence if an officer had gone for a warrant. Rather than pointing out such evidence, the State argues that the officers should not have been required to get a warrant "for acts to occur *in futuro,*" when they were not yet sure that the predicted drug sale had not already taken place. This

argument is unpersuasive. Once the officers had probable cause to arrest Mowrer, they were required to seek a warrant as soon as possible. The officers' suspicion that further crimes might yet take place did not hinder them from seeking a warrant after they had probable cause. The State has not shown any exigent circumstances to excuse their failure to get a warrant for Mowrer's arrest. The warrantless arrest of Mowrer in his room was an unreasonable seizure under the Fourth Amendment. Thus, all evidence discovered as a result of Mowrer's arrest was inadmissible. *Pirtle v. State,* (1975) 263 Ind. 16, 29, 323 N.E.2d 634, 640. The trial court erred in failing to suppress evidence obtained from the search incident to Mowrer's arrest.

■ Mowrer's second allegation of error arises from the trial court's failure to suppress the L.S.D. and Diazepam tablets which were found in a search of Mowrer's room and suitcases pursuant to a search warrant. Mowrer argues that there was insufficient probable cause to support the issuance of the warrant. In assessing the validity of a warrant, we look only at the facts stated to the magistrate who issued it. *Watt v. State,* (1980) Ind.App., 412 N.E.2d 90, 94. The search warrant at issue here was based on the affidavit of Sgt. Steven Banks, which stated as follows:

Det. Sgt. Steven Banks, I.S.P. swears [sic.] has good cause to believe that lysergic acid diethylamide (L.S.D.), cocaine, an extract of coca, and marijuana, cannabis sativa, the possession of which is unlawful, are being concealed in the Hyatt Regency Hotel, Capitol and Washington Streets, Indianapolis, Marion County, Indiana, in Room 1922, in three (3) pieces of luggage contained therein, and in a 1973 two-door Pontiac Grand Prix, License Number 1980 19A4205 (Indiana), burgundy in color and located in the parking garage of the Hyatt Regency Hotel at Capital and Washington Streets, Indianapolis, Marion County, Indiana.

This affiant bases his belief on the fact that on or about February 27, 1980, Det.

Sgt. Michael L. Bolin, an Indiana State Police narcotics officer was told by an informant that in the latter part of the week of February 25, 1980, an individual would be arriving in Indiana from the State of California with a quantity of L.S.D. and that this individual normally stayed in Indianapolis, Marion County, while in Indiana. The informant also stated that one Roy Burger of Jasper, Indiana would meet with the individual from California in Indianapolis, Marion County, Indiana to purchase quantities of L.S.D. for distribution in Indiana and Michigan.

On or about March 1 and March 3, 1980, this informant further told Det. Sgt. Coate, an Indiana State Police narcotics officer, that the individual from California would again be travelling to Indianapolis Indiana from California in the near future for the purpose of selling L.S.D. to one Roy Burger.

On March 4, 1980, Det. Sgt. Bolin was told by Det. Sgt. Richard W. Badics, a narcotics officer for the City of South Bend Indiana, that he had been told by an informant that one Jerry Moyer would arrive in Indianapolis, Marion County, Indiana, from Westminster, Cãlifornia on March 5, 1980 for the purpose of selling a quantity of L.S.D. to an individual identified only as "Burger," who would then take the L.S.D. back to Jasper Indiana. He further stated that the informant had told him that one Jerry Moyer had already checked into a plush Indianapolis hotel near the airport under his own name.

Later on March 4, 1980, Det. Sgt. Bolin contacted Lt. Charles Williams of the Indianapolis branch of the Drug Enforcement Section of the Indiana State Police and related the above information to him. Lt. Williams then directed this affiant, Det. Sgt. Richard McCord, of the Drug Enforcement Section of the Indiana State Police, and did himself assist in checking the hotels in the vicinity of Indianapolis International Airport and the passenger manifests of TWA and American Airlines for all flights to Indianapolis originating in California for the name Jerry Moyer. After checking these items for March 4–5, 1980, they failed to find any such name.

Subsequent to Det. Sgt. Bolin's conversation with Lt. Williams on March 4, 1980, he spoke again with Det. Sgt. Badics who told him that his informant had further stated that "Jerry Moyer" in fact spelled his last name "Mowrer." Det. Sgt. Bolin then contacted the District 44 post of the Indiana State Police in Indianapolis, Marion County, Indiana and asked Commander James Hulley to check the Hyatt Regency Hotel and the Hilton Hotel, both in downtown Indianapolis, for a Jerry or Gerald Mowrer. Trooper Hulley did so and called Det. jSgt. [sic.] Bolin back and related that one J. Mowerer or Mowrer from Wesminster California had checked into the Hyatt Regency Hotel in Indpls, Marion County, Indiana on March 3, 1980, and had extended his reservations to March 5, 1980, after originally intending to check out on March 4, 1980.

On March 5, 1980 this affiant verified that one J. Mowrer and another white male were checked into Room 1922 of the Hyatt Regency Hotel at Capitol and Washington Streets, Indianapolis, Marion County, Indiana, and at 3 a.m. on March 5, 1980, this affiant set up surveillance on said Room 1922. This affiant was joined by Det. Sgts. Bolin, Badics, McCord, and by Det. Sgts. Douglas Schultz and Michael Jones, aolso [sic.] of the Drug Enforcement Section of the Indiana State Police.

At 1:26 p.m. on March 5, 1980, an individual believed to be Jerry Mowrer exited Room 1922 of the Hyatt Regency Hotel and returned at 1:28 p.m. with two white males, all of whom reentered Room 1922 at that time. At 2:20 p.m. on March 5, 1980, four white male subjects attempted to exist [sic.] Room 1922, at which point this affiant, Det. Sgts. Badics, Bolin, Schultz, McCord, Jones, and Det. Sgts. Rocky McClain and Douglas Sheets of the Drug Enforcement Section of the Indiana State Police entered the room and identi-

fied ourselves as police officers. We placed the four subjects under arrest at that time for conspiracy to commit dealing in a Schedule I controlled substance and during a search pursuant to their arrests, quantities of suspected L.S.D. and suspected cocaine were found on one Edward Haller, W/M/27 of Jasper Indiana. In addition, Marijuana, cannabis sativa, was found on one Martin Beck, W/M/27 of Jasper Indiana.

Also observed in Room 1922 of the Hyatt Regency Hotel were a rolled dollar bill covered with a white powder residue, a light blue powder residue on a dresser, q [sic.] white powder residue on a table, two (2) brown suitcases, and one (1) red briefcase.

. . . . .

Based on the above information, I am requesting that this search warrant be issued for Room 1922 in the Hyatt Regency Hotel at Capitol and Washington Streets, Indianapolis, Marion County, Indiana, for three (3) suitcases located therein . . . .

As noted above, the State may not exploit evidence gathered from the illegal arrest of the defendant. Thus, the question is whether, aside from references to such evidence, the affidavit's remaining allegations are sufficient to establish probable cause for the search of Mowrer's room and suitcases.

Mowrer argues that these remaining allegations are not sufficient, because the only evidence of any contraband in the room was the officer's hearsay account of the unnamed informants' tips. In support of his argument, Mowrer cites *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. In *Aguilar,* the Supreme Court held that, although probable cause may be based on hearsay, it may not be based on a person's *conclusory statement* that contraband is hidden in some place, especially when the statement was made by an unnamed, unsworn informant. Justice Goldberg, writing for the majority, noted the general rule that " 'the inferences from the facts which lead to the complaint [must]

be drawn by a neutral and detached magistrate . . . .' " *Id.* at 112–13, 84 S.Ct. at 1512–1513. For this reason, the Court held that where probable cause depends on hearsay the affiant must (1) set forth some of "the underlying circumstances on which the informant based his conclusion, and (2) set forth some of the facts from which the affiant concluded "that the informant . . . was 'credible' or his information 'reliable.' " *Id.* at 114, 84 S.Ct. at 1513. *See Jones v. State,* (1980) Ind.App., 409 N.E.2d 1254, 1257.

■ Since *Aguilar, supra,* was decided, it has been made clear that probable cause may also be based on an informant's tips where independent corroboration of the informant's statements provides a "substantial basis" for crediting them. *United States v. Harris,* (1971) 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *Spinelli v. United States,* (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. This "substantial basis" test, however, is not completely independent of the criteria established in *Aguilar:*

If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?

. . . . .

A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone.

*Spinelli, supra,* at 415–16, 89 S.Ct. at 588–589.

■ The affidavit at issue in this case, as the State admits, totally fails the *Aguilar*

test: it contains no statement of the basis of the informant's conclusions and no facts establishing the informant's reliability. Rather, the State argues that there was adequate independent corroboration of the informant's tips, pointing to several facts: (1) the two tips, received from different informants, corroborated each other, (2) a Jerry Mowrer from Westminster, California was indeed found in a "plush" Indianapolis hotel on March 5, 1980, and (3) the persons entering Mowrer's room were indeed from Jasper, Indiana, as predicted. We find these corroborating facts inadequate to provide a substantial basis for crediting the informant's statements. First, although the fact that two informants told similar stories makes it less likely that their statements were fabricated, such corroboration does little to show that the informants had any reasonable basis for their conclusions. Neither tip is so specific and detailed as to lead to the conclusion that the statement was based on the informant's personal knowledge. Further, the additional facts in the affidavit do little to show either that the informants were credible or that they had a reasonable basis for their conclusions. The facts observed by the officers bore out the informant's predictions only in a general way, and were inconsistent with the tips in several details. A Jerry Mowrer, from Westminster, California, was indeed checked into a "plush" Indianapolis hotel at the predicted time; but this hotel was *not* "near the airport." Mowrer was met, as predicted, by someone from Jasper, Indiana; but he was *not* met by anyone named Roy Burger. Thus, far from providing a "substantial basis" for crediting the informants' statements, the extrinsic facts disclosed in the affidavit here cast doubt upon the informants' reliability.

In this context, the State relies upon *Draper v. United States,* (1959) 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. In *Draper,* the court found that an informant's tip was sufficiently corroborated where the informant (who had proven reliable in the past) unerringly described the suspect's appearance, the clothes he would be wearing, the bag he would carry, and his habit of walk-

ing quickly. The informant further specified the train on which the suspect would be arriving. *Draper* is clearly distinguishable from the present case. First, there was no showing here that the informants were reliable. Further, the tips relied on here were neither detailed nor completely accurate as in *Draper.* The facts in this case are closer to those in *Bowles v. State,* (1971) 256 Ind. 27, 267 N.E.2d 56, in which the court observed:

> From the record all that is shown is that the officer was told appellant would be in a certain area at a certain time and would be carrying narcotics. Such a "tip" might well have been telephoned in regarding one of the police officers who made the arrest of appellant. An "informer" knowing the officer's work habits could call in and indicate that the officer would be in front of a certain building at an approximate time. Certainly this might be true. But the mere fact that this might be the case, without more, hardly supports an intrusion into the officer's personal security.

*Id.* at 30, 267 N.E.2d at 58.

Because the affidavit in this case shows no substantial factual basis for crediting the informants' statements, we find that those statements were insufficient to show probable cause for the issuance of a search warrant. Because there were no other facts alleged to show probable cause, the search warrant was invalid, and evidence gathered in the search of Mowrer's room and suitcases should have been suppressed.

The judgment of the trial court is reversed.

MILLER, J., concurs.

CONOVER, J., dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent for two reasons:
1. the arrest was lawful, and
2. the search warrant was validly issued.

Thus, the evidence obtained was admissible.

## A. *The Arrest*

### 1. *The Occupants Had No Expectation of Privacy When They Opened the Door.*

The arrest without warrant was valid. It was made upon probable cause at a time when the hotel room occupants had no further expectation of privacy, i.e., when they voluntarily opened the hotel room door preparatory to leaving. *United States v. Santana,* (1976) 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300. Arrests without warrants under such circumstances are valid, even when the door is opened in response to a police knock. *United States v. Botero,* (9th Cir. 1978) 589 F.2d 430, *cert. den'd.* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *People v. Burns,* (Colo.1980) 200 Colo. 387, 615 P.2d 686. Here the police did not even knock, the door was opened voluntarily by the occupants. There was no need to wait until they reached the hallway. Reaching the threshold was enough.

### 2. *The Hotel Room Was a "Place of Business" Not a "Home".*

Further, under the uncontroverted facts of this case, Mr. Mowrer's hotel room was his place of business, not his transient home at the time the arrests were made. The evidence clearly demonstrates Mr. Mowrer came from Westminster, California, to Indianapolis for the sole and only purpose of transacting business, albeit illegal, in his Indianapolis hotel room with Mr. Burger of Jasper, Indiana, namely, the sale of illicit drugs. That was why he rented the hotel room. Its use for sleeping and eating was merely ancillary to that purpose.

While it could logically be argued the room was a "home" entitled to Fourth Amendment protection so long as it was used for eating and sleeping, such argument fails when the character of its use changed. The officers who had the room under surveillance waited until Mowrer left the room and returned with two other men two minutes later. It was reasonable for them to assume the sale would then be made based upon the information then available to them. Entry and arrest at that time would have been justified and lawful, but these officers chose to wait to be absolutely certain the transaction, in the vernacular, had "gone down." At the time these arrests were made, without question the hotel room was a place of business, not a home.

The facts of this case are on all fours with those of *U.S. v. Blalock,* (9 Cir.1978) 578 F.2d 245. There, as here the arrests were lawful because they were (a) based upon probable cause, and (b) consummated upon business premises during business hours. None of the hotel cases cited by the majority deal with hotel rooms rented for the purpose of transacting business. They deal with the primary use thereof as temporary "homes" to which the proscriptions of the Fourth Amendment obviously applied.

Also because the arrests were made on "business" premises, they were lawful. The evidence thereby obtained was admissible.

## B. *The Hotel Room Search Was Lawful Because the Affidavit Contained Statements Constituting Probable Cause.*

Our standard of review in Fourth Amendment matters is basically the same as in other cases we review on appeal. We may not weigh the evidence, nor determine the credibility of witnesses. Our inquiry is limited to the narrow question of whether a sufficient showing of probable cause was made so as to justify the magistrate's issuance of the search warrant involved. For our guidance when reviewing these matters, the United States Supreme Court laid out the following judicial benchmarks:

> [W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 1062 [18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United*

*States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745 [13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States,* 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736 [4 L.Ed.2d 697] (1960). *Spinelli v. United States,* (1969) 393 U.S. 410, 419, 420, 89 S.Ct. 584, 590, 591, 21 L.Ed.2d 637.

While conclusory statements cannot establish probable cause, either information supplied by a reliable informant or independently corroborated information where no showing of the informant's reliability appears may supply the probable cause necessary for the issuance of such a warrant.

It is unquestioned the affidavit shows substantially all the information given the police by the informants was independently verified. Before the arrest was made the police first checked hotels near the Indianapolis airport and airline passenger manifests, but did not find the name "Jerry Moyer". When one of the informants later advised the last name was spelled "Mowrer", the police found he was registered at the Hyatt Regency. At that point the police had independently determined their informants' information was reliable in these particulars:

(a) Jerry Mowrer
(b) from Westminster,
(c) California,
(d) was registered at a "plush hotel" (the Hyatt Regency),
(e) in Indianapolis, and he
(f) had arrived on March 3rd, and extended his stay to
(g) March 5th.

Having independently verified the reliability of that much of their information, the police and the magistrate could reasonably assume the balance of it was accurate, and thus, the informants were reliable. Verification of that information provided the substantial basis necessary to give credence to the informants' "tips". *United States v. Harris,* (1971) 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *Spinelli, supra.*

The officers' observations of "white powder" on the money, table and suitcases further butressed probable cause. These observations were available in determining probable cause because the arrests were lawful.

The magistrate reasonably could and did find probable cause to issue the search warrant based upon the facts contained in the affidavit before him, the text of which is fully set out in the majority opinion.

Giving the magistrate's decision great deference, as we are required to do on appeal, I would affirm the trial court.